J. WALTER THOMPSON COMPANY, Appellant, *v.* QUEEN CITY CYCLE COMPANY, Defendant.

G. FRANK FRIES and Others, Temporary Receivers of the QUEEN CITY CYCLE COMPANY, Respondents.

*Attachment — voluntary application for a receiver by an insolvent corporation — not a disposition of its property in fraud of creditors.*

A fraudulent intent is not established by proof that an insolvent corporation has made a statement of its financial condition at a meeting of its creditors, and having been refused by them an extension of time, at the request of the creditors, has applied for the appointment of a receiver to take possession of its property and assets, and to continue the business to the extent of putting certain unfinished work in marketable shape and to convert it into cash for the benefit of the creditors of said company, and an attachment, granted on behalf of one of its creditors on the ground that the corporation, by the appointment of a receiver, was about to dispose of its property with intent to defraud its creditors, will be vacated.

The fact that the attaching creditor did not assent to the arrangement is not material.

The delay necessarily occasioned in distributing the estate of an insolvent to creditors through the intervention of a receiver has never been regarded as a circumstance justifying the inference of an intent to defraud creditors on the part of a debtor thus voluntarily devoting his property to the payment of his debts.

Where a debtor, upon the advice of his creditors, voluntarily adopts such means as will secure the application of all his property to the payment of his debts, the court will indulge every intendment in support of such action, disregarding technical objections not affecting the merits or arbitrarily controlling the result, instead of adopting some strained construction for the purpose of discovering an evil intent, which manifestly does not exist.

APPEAL by the plaintiff, the J. Walter Thompson Company, from an order of the Supreme Court, made at the Erie Special Term and

entered in the office of the clerk of the county of Erie on the 28th day of August, 1896, vacating a warrant of attachment theretofore granted in the action.

*Martin Clark*, for the appellant.

*Ingram & Mitchell*, for the respondents.

Order affirmed, with ten dollars costs and disbursements, on the opinion of CHILDS, J., delivered at Special Term.

All concurred.

The following is the opinion of CHILDS, J.:

CHILDS, J.:

The attachment herein was doubtless granted upon the ground that the affidavit used on the application therefor disclosed the fact that the defendant corporation was about to dispose of its property, with intent to defraud its creditors, as provided in subdivision 2 of section 636 of the Code of Civil Procedure, and, if sustained, it must be for the reason that the affidavits read on this motion support such claim, and, taken together, permit the inference that the consent of the officers of the defendant to the appointment of receivers thereof, amounts to a disposition of the property of the corporation with the intent to defraud its creditors.

The moving party has read affidavits on this motion tending to show that the officers of the defendant corporation, in procuring the appointment of receivers of such corporation, acted in good faith and for the benefit and protection of all of the creditors of such corporation, and negativing the claim that such action was taken with the intent of disposing of the property of the corporation in fraud of the rights of any of its creditors.

The plaintiff, in addition to the affidavit upon which the attachment was granted, has read affidavits in support of its claim.

There is no such discrepancy or disagreement in the statements contained in these affidavits as to make it necessary to quote therefrom. The facts established thereby are as follows:

The defendant, the Queen City Cycle Company, is a domestic corporation lately carrying on business in the county of Erie, this State. The plaintiff is a foreign corporation and a creditor of the defendant corporation to the amount of $4,209.67. On the 30th

day of July, 1896, a meeting of all of the creditors of the defendant company was held in the city of Buffalo, the plaintiff company being represented thereat. Such meeting was called by the officers of the defendant for the purpose of considering the financial condition of said company. At such meeting Frank Fries, the president of the defendant, presented a statement showing the condition of the affairs of the defendant, from which it appeared that the debts and liabilities of the company exceeded the nominal value of its assets, and that said company was insolvent. Mr. Fries stated that he had called the meeting for the purpose of asking for a three years' extension of time for the payment of the debts of the company.

That such request was made to the end that all of the creditors of the company could be treated equally and paid in full. After hearing such statement the creditors appointed a committee consisting of ten of their number for the purpose of taking into account the situation of affairs of said company and reporting at an adjourned meeting of the creditors. This committee subsequently reported to the effect that the extension of time, as requested, could not be granted, but that the best course to pursue was to ask the directors of the company to apply for the appointment of a receiver, to the end that such receiver might take possession of the property and assets of the company and convert the same into cash at the earliest date possible and pay the creditors of said company. To this report Mr. Fries replied that he regretted that the creditors had not seen fit to pursue the course by him suggested, but that if the creditors desired that a receiver be appointed he and the other officers would concur in that decision and make the application.

During the meeting of creditors statements were made by the president of the defendant as to the finished and unfinished work on hand and the value thereof, from which it appeared that there was on hand unfinished and partly manufactured work of the present value of about $72,000, which, if sold in its then condition, would bring but a small percentage of its value; and the propriety of continuing the work by the receivers to be appointed, to the extent of putting this material in marketable shape, was discussed and deemed advisable, and it was practically agreed that it should be done.

After such meeting of creditors, and on the 3d day of August, 1896, at a Special Term of this court, upon the application of the directors of defendant, an order was duly granted by the Hon. TRUMAN C. WHITE, justice, appointing G. Frank Fries, Arthur Garford and Herman Waterman temporary receivers of the property of defendant. Prior to that time the sheriff of the county of Erie had levied the attachment granted herein upon the property of the defendant, and is now in possession thereof.

This motion is made by the receiver.

From the facts, as found and above stated, it appears that upon the discovery of the insolvent condition of the defendant, the officers thereof promptly called a meeting of all its creditors, and, without reserve, placed them in possession of all information bearing upon the financial condition of the defendant, making such request as, in their judgment, was thought best for the interest of all concerned, and upon such statement submitted all matters to such creditors. No creditor was excluded from this conference; no concealment of the true condition of affairs was attempted; no disposition to treat one creditor differently than another was evinced; no favor to the corporation, at the expense of any creditor, was asked. But, on the contrary, all matters were placed in the hands of the creditors to be administered first for their benefit, and ultimately the only request made by the defendant was ignored, and the direction of the creditors followed.

It is, however, suggested by the plaintiff that inasmuch as the action advised by the creditors and consented to by the officers of the defendant would prevent the immediate collection of the demands of the several creditors by action at law, that the intent to defraud such creditors is apparent or plainly to be inferred, and upon this theory principally rests the plaintiff's claim to hold its attachment. It would be difficult to support this contention for the reason that the case is destitute of any fact from which an intent to defraud may be legitimately inferred. Ordinarily a person who, by any act, intends to defraud another, is supposed also to intend to reap some benefit from his fraudulent act. So generally is this found to be true that it may be stated as the rule, and, where a case is found in which it is alleged that an act is done by one with the intent to defraud another, it also appearing that the one doing the

act could receive no benefit therefrom, nor confer a benefit upon another, the mind would be at once led to the conclusion that no fraudulent intent existed. So in this case it appearing that the defendant company can receive no benefit from the act complained of, but that such act was wholly in the interest of the creditors of such company, it would be difficult to reach the conclusion that the same was the result of a fraudulent intent, in the absence of which this attachment cannot be sustained.

The delay necessarily occasioned in distributing the estate of an insolvent to creditors, through the intervention of an assignee or receiver, has never been regarded as a circumstance justifying the inference of an intent to defraud creditors on the part of one thus voluntarily devoting his or its property to the payment of his or its debts. But, on the contrary, where the debtor, by the employment of such means, has devoted the whole of his or its property to the payment of all of his or its debts, such disposition has uniformly received the approval of the courts as evidence of good faith; and, in all cases of this class, it must be assumed that the debtor understood that by his act his creditors would be prevented from the immediate enforcement of their claims by action at law.

The plaintiff's claim has thus far been examined upon the suggestion that the acts of the officers of the defendant, of which it complains, were voluntary and opposed to the interest of its creditors; that they evidence an intention to defraud the creditors of the defendant. Manifestly this claim cannot be sustained, as we have seen that every act from which the plaintiff insists that the intent to defraud the creditors of the defendant may be inferred, was and is the act of the creditors themselves; all of the creditors of the defendant were present and acting upon the information furnished by the defendant, which, it appears, was complete and truthful; that they were acting in their own interest and with the view of securing their pay, cannot be doubted; that they refused to accede to the manner of adjustment proposed by the company is conceded; that they originated and proposed every step that has been taken is abundantly proved. How then can it be successfully claimed that the defendant by acceding to their demands intended to defraud those same creditors?

The plaintiff may, however, and does claim that it did not assent

to the view of the other creditors of defendant, or consent to the scheme proposed by them. This will not avail to defeat what appears to be a just and equitable scheme to apply all of the property of the defendant upon all of its debts; to support this claim it must establish the fact asserted, that the transfer of the property of the defendant to the receivers was made by the defendant with intent to defraud its creditors.

The plaintiff further insists that the discussion in regard to, and the agreement to continue the business for the purpose of putting the assets of the company in marketable shape, furnishes evidence of an intent on the part of the company to defraud its creditors. This does not aid the plaintiff, for the reason that upon the appointment of receivers of the defendant their duty became plain to at once convert the assets of the company into money and distribute the same to the creditors. Any modification of this general rule which might be deemed advisable for the benefit of all, would necessarily be under the advice and by direction of the court, uninfluenced or controlled by the discussions or agreements of the creditors or officers made before the appointment of the receivers.

A further and conclusive answer to this contention is found in the fact that all of the discussion and all agreements in this behalf arose and were enforced by the creditors themselves. This discussion may be concluded with the suggestion that where a debtor, situated similarly to the defendant in this case, *voluntarily* adopts such means as will secure the application of *all* of his property to the payment of debts, the court will indulge every intendment in support of such action, disregarding technical objections not affecting the merits or arbitrarily controlling the result, instead of adopting some strained construction for the purpose of discovering an evil intent which manifestly does not exist.

Defendant's motion to vacate attachment herein is granted, with ten dollars costs.